OPINION OF THE COURT
Donald J. Corbett, Jr., J.
The State of New York moves the court for dismissal of this claim on the grounds of lack of jurisdiction, failure to state a cause of action and untimely filing.
The claim, filed on January 17, 1985, seeks damages from the State resulting from the elimination of a railroad crossing which purportedly has left landlocked 70 acres of claimant’s realty in the Town of Riga, New York.
A brief historical retrospective will allow cogent discussion of the issues herein. The Penn Central Railroad in January 1976 physically blocked and closed off the railroad crossing at Burnt Mills Road, without the requisite formalities. On or about April 1, 1976, the Consolidated Rail Corporation (Con *281 rail) became the successor to the interests of the bankrupt Penn Central Railroad. On March 23, 1983, a petition -was filed by the Town of Riga pursuant to Railroad Law § 91 seeking, albeit with certain conditions, reopening of the crossing. On April 28, 1983 a cross petition was filed by Conrail requesting an order formally abolishing the crossing, inasmuch as no such order had previously been obtained, despite the clear statutory requirements therefor (see, Grade Crossing Elimination Acts of 1970 and 1977 [Transportation Law § 220 et seq.; L 1977, ch 840]; 17 NYCRR 915.3, 915.4; Railroad Law § 91).[1] Thereafter, the decision rendered by the administrative law judge appointed through the auspices of the Department of Transportation resulted in the order of January 17, 1984, which summarized the history of the subject Burnt Mills Road railroad crossing.[2]
It is alleged, without dispute, that on June 1, 1984 claimant filed a claim for damages pursuant to Railroad Law § 94 (8) with the Commissioner of Transportation. That statute permits the filing of such a claim resulting from the elimination of a crossing, if it is filed "within six months after completion of the work necessary” for such elimination.[3] (Railroad Law § 94 [8].) Where damages to property arising from elimination of a crossing were not occasioned by an appropriation by the State of New York, there was no common-law right of recovery and the dismissal of claims was required on the ground of damnum absque injuria (Lewis v State of New York, 258 NY 568), unless statutory liability attached (Mirro v State of New *282 York, 172 Misc 963, affd 260 App Div 525, affd 285 NY 678; Mistretta v State of New York, 201 Misc 946, affd 280 App Div 960; cf. Coffey v State of New York, 291 NY 494).
Since the claim for damage to claimant’s realty herein (a de facto taking) is derived solely by statute (Matter of Melenbacker v Village of Salamanca, 188 NY 370, 377), the statutory intent must be examined closely. Railroad Law § 94 (8) provides for the filing of a claim with the Commissioner of Transportation within six months after completion of necessary work, but remains silent about postfiling procedures or appeals. Transportation Law § 228 (12) contemplates formal grade crossing elimination projects which are nonexistent in this case.
It is undisputed that the instant claim to the Court of Claims was not filed within six months after "completion of the elimination project” (Cimo v State of New York, 306 NY 143, 145). In Cimo (supra), the court reviewed the Grade Crossing Elimination Act (L 1928, ch 678), wherein the statute specifically required the filing of a claim within six months after final approval of the elimination work, creating a limitation period shorter than the two years permitted under Court of Claims Act § 10 (4). The Grade Crossing Elimination Act of 1970 (L 1970, ch 267) in Transportation Law § 228 (18) provided for an identical six-month period within which to file a claim in the Court of Claims. In Cimo (supra), the court sustained the dismissal of the claim for having failed to meet the shorter limitations period contained within the Grade Crossing Elimination Act, noting that a more general statute like the Court of Claims Act § 10 (4) will not repeal a more specific one like the Grade Crossing Elimination Act.
In 1977 the Legislature greatly expanded the time period within which a claim was to be filed with the Court of Claims, expanding it from six months to three years, and adding that such filing shall be made pursuant to the provisions of the Eminent Domain Procedure Law (Grade Crossing Elimination Act of 1977 [L 1977, ch 840]).
This apparently is the first instance in which a court has been called upon to examine the expanded three-year time limitation of the 1977 statute. The rationale of Cimo (supra) remains viable, however, and is applicable here. While the claim there was dismissed for its failure to have been filed within the six-month limitation contained in the then existent statute, it coherently follows that a claim filed here with the *283 Court of Claims, if within a three-year period from the date on which the Commissioner formally ordered the closing, would be timely filed.
Further, a review of the Grade Crossing Elimination Act, as it existed in 1928, through the amendments pursuant to the Laws of 1977 (ch 840), reveals an intention to provide a reasonable period for negotiation and adjustment of damages incurred in the elimination of a grade crossing. In keeping with this intention, a period for negotiation and settlement exists prior to recourse to the Court of Claims. The pleadings herein reveal that no elimination project contract was in existence (cf. Welz & Zerweck v State of New York, 174 Misc 198), theoretically depriving the parties of the opportunity to agree upon adjustments for damages.
The interplay of the two statutes is crucial to my determination. The claimant has followed Railroad Law § 94 (8) by filing with the Commissioner of the Department of Transportation a claim for damages on account of the elimination of the crossing at Burnt Mills Road. Claimant alleges no response to said claim, but it is not clear that the claimant can meet the test that the "amount of any such claim is not agreed upon” (Transportation Law § 228 [12]) as the Commissioner has allegedly remained mute. As a public official, the Commissioner should respond to the claim, and if he fails to do so in a responsible or timely fashion, there are statutory remedies thereto including, inter alia, application for a writ of mandamus (CPLR art 78).
For further clarification I deem January 17, 1984 (the date of order from the Department of Transportation) to be the date of "acceptance by the commissioner of the final agreement of the completed elimination project contract”, specified in Transportation Law § 228 (12)[4] and pursuant to the procedures contained therein, a claim filed within three years from January 17, 1984 will be timely filed (Cimo v State of New York, supra), upon a proper showing that the amount of such claim has not been agreed upon.
Thus, contrary to the contentions of the State, I find that *284 the claim herein is not untimely, but is in fact premature (cf. Reifke v State of New York, 31 AD2d 67).
Accordingly, the claim is dismissed, without prejudice.

. The decision of the administrative law judge specifically declined to confirm, nunc pro tunc, the prior closing of the crossing in January 1976. The order recites a directive that the grade crossing be closed by the erection thereafter of permanent barricades.

. The decision and order were incorporated into the pleadings herein. As the pleadings are silent, the court concludes that no appeal from such order was taken by any party pursuant to Railroad Law § 91 or Transportation Law § 226.

. It has been held that the damages are caused when the physical change was made (Champion Oil Co. v State of New York, 161 Misc 143, 145, affd 251 App Div 781, Iv denied 275 NY 649; cf. People ex rel. Janes v Dickey, 206 NY 581, 586). The court in Champion (supra), however, was concerned with the premature filing of a claim prior to final approval of the elimination work by the Public Service Commission, a circumstance not present in the claim at bar. It has been contended, with considerable support, that the January 1984 order merely formalized the January 1976 closing of the crossing and thus all work had been thence completed. Nevertheless, since the Grade Crossing Elimination Act and Railroad Law §91 clearly mandate an order to formally close a railroad crossing, I find that the grade crossing was not formally closed until January 17, 1984.

. In the absence of an order pursuant to Railroad Law § 91 et seq., claimant was not on formal notice of the closing of the crossing until the order had been communicated to him. Inasmuch as the State’s putative liability and the claimant’s putative damages are creations of statute, the date of the order must be synonymous with the date of final acceptance (cf. Reifke v State of New York, 31 AD2d 67, 70).